*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TIMOTHY JAMES EDWARDS,

Defendant-Appellant.

UNPUBLISHED
July 20, 2026
12:12 PM

No. 369317
Missaukee Circuit Court
LC No. 2023-003412-FC

Before: M. J. KELLY, P.J., and PATEL and KOROBKIN, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b) (sexual penetration of victim under 13 years of age by perpetrator 17 years of age or older), and five counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b) (sexual contact with victim under 13 years of age by perpetrator 17 years of age or older). The trial court sentenced defendant, as a second-offense habitual offender, MCL 769.10, to serve concurrent terms of imprisonment of 25 to 50 years for each conviction of CSC-I, and 88 to 270 months for each conviction of CSC-II. We affirm.

## I. FACTS

This case arises from allegations that defendant sexually abused his step-niece, KS, and his step-nephew, KP. From approximately 2012 to 2015, defendant lived in Lake City, Michigan, with his brother, Allen, his sister-in-law, Cassie, the victims, and Allen's and Cassie's two youngest children. Both KS and KP alleged that defendant sexually abused them while residing in their home and babysitting them. The two victims were in their mid-teens at trial, and neither could remember precisely when the incidents of abuse occurred or how old they were at the time of the incidents.

KS and KP testified that they did not tell Allen and Cassie about the abuse until 2015, when KS called them out of concern that defendant was sexually abusing their younger sibling. After hearing the allegations, Allen and Cassie confronted defendant and forced him to leave their Lake City home. Allen and Cassie did not report the abuse to the police or Children's Protective Services. The family moved to Florida and resided with Allen's and defendant's mother, Lori.

The family returned to Michigan in 2022, at which time Cassie and KS reported defendant's sexual abuse.

Following his conviction, defendant moved for a new trial, alleging that he had been denied the effective assistance of counsel. Defendant first challenged trial counsel's failure to call character witnesses to testify about his "good sexual morals," namely his lack of sexual interest in children. Defendant also asserted that trial counsel failed to undertake reasonable investigation or develop the theory that the victims fabricated their allegations against him. Specifically, defendant alleged that Lori had threatened to force Allen, Cassie, and their family out of her home in Florida, in retaliation for which Cassie coached the victims to accuse defendant of sexual abuse. Defendant further alleged that trial counsel was ineffective by not seeking to have the complete video recording of defendant's interview with law enforcement, as opposed to selected segments, presented to the jury. After a *Ginther*[1] hearing, the trial court denied defendant's motion. This appeal followed.

## II. ANALYSIS

Defendant argues that trial counsel was ineffective for failing to (1) call character witnesses at trial, (2) pursue the theory that Cassie and the victims fabricated the allegations, and (3) present the complete video recording of defendant's interview. We disagree.

An ineffective-assistance-of-counsel claim presents a "mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). We review de novo constitutional questions and the trial court's findings of fact, if any, are reviewed for clear error. *Id*.

The United States and Michigan Constitutions afford criminal defendants the right to effective assistance of counsel. *Id*. at 488, citing Const 1963, art 1, § 20; US Const Am VI; *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To prevail on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different." *Yeager*, 511 Mich at 488 (cleaned up). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (cleaned up). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (cleaned up).

We will not second-guess matters of trial strategy or "assess counsel's competence with the benefit of hindsight." *People v Abcumby-Blair*, 335 Mich App 210, 237; 966 NW2d 437 (2020) (cleaned up). "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy[.]" *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). "We give defense counsel wide

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

discretion in matters of trial strategy because counsel may be required to take calculated risks to win a case." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Carll*, 322 Mich App 690, 702; 915 NW2d 387 (2018) (cleaned up).

## A. CHARACTER EVIDENCE

Defendant first alleges that trial counsel was ineffective for failing to present character evidence under MRE 404 and 405 in the form of opinion and reputation that defendant was not sexually interested in children. We disagree.

Generally, character evidence is not admissible to prove that a defendant acted in conformity with the allegations supporting the charged offenses. MRE 404(a).[2] However, MRE 404(a)(1) allows a criminal defendant to "offer evidence that he or she has a character trait that makes it less likely that he or she committed the charged offense." *People v Roper*, 286 Mich App 77, 93; 777 NW2d 483 (2009). If a defendant chooses to present such evidence, the prosecution is entitled to present character evidence in rebuttal. *Id*.

MRE 405 provides as follows:

> (a) In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into reports of relevant specific instances of conduct.

> (b) In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct.

The testimony at the posttrial hearing indicated that none of defendant's proposed character witnesses could competently attest to defendant's good sexual morals or reputation in the community. His proposed character witnesses all testified that defendant did not have a reputation for having a sexual interest in children, but each also acknowledged not having spoken to defendant or anyone in his community about his sexual morals or preferences. Trial counsel testified that he doubted that the proposed character witnesses could properly testify regarding defendant's reputation for good sexual morals, and the trial court concluded that trial counsel would not have been able to lay a proper foundation for such testimony. Defendant's proposed witnesses did not have sufficient knowledge of defendant's propensity, or lack thereof, to engage in sexual acts with children to properly offer such opinion or reputation testimony at trial. See MRE 405(a).

---

[2] The Rules of Evidence were substantially amended, effective January 1, 2024. See 512 Mich lxiii-cxxi (2023). For purposes of this opinion, we will rely on the versions of the rules in effect at the time of trial.

Defendant also argues testimony about his appropriate interactions with children would have been admissible under MRE 405(b), because his character was an element of his CSC charges. But defendant's character is not an essential element of a charge of criminal sexual conduct. See MCL 750.520b. Defendant's proposed character witnesses were prepared to testify at trial that defendant had always acted appropriately around children, and that they had never observed any conduct to suggest that defendant was sexually attracted to children. Such testimony would have been inadmissible under MRE 405(b) because defendant's character for not acting inappropriately around, or demonstrating a sexual interest in, children was not an essential element to offense. "Counsel is not ineffective for failing to advance a meritless position . . . ." *Head*, 323 Mich App at 539 (cleaned up).

In addition to concerns about admissibility, trial counsel recognized that cross-examination of defendant's proposed character witnesses could have disadvantaged defendant. See *Roper*, 286 Mich App at 93. At the *Ginther* hearing, trial counsel testified that the proposed character witnesses were very "generic" in their assertions that defendant did not sexually assault the victims. Further, trial counsel understood that, because defendant was on probation for a felony fraud conviction when the sexual assaults occurred, if any of defendant's character witnesses testified generally about defendant's good character or truthfulness, the prosecution could have impeached them with defendant's criminal history. Cross-examination could have revealed how little the witnesses interacted with defendant and the victims while defendant lived in the Lake City home, given that none of the proposed witnesses had personal knowledge regarding what happened or was regularly present with defendant and the victims. The record therefore indicates that any testimony from defendant's proposed character witnesses would have been of limited value while creating a risk of negatively impacting the defense.

The decision whether to call defendant's proposed character witnesses was a matter of trial strategy, *Horn*, 279 Mich App at 39, for which counsel has wide discretion, *Heft*, 299 Mich App at 83, and defendant has not identified or offered any evidence to overcome the strong presumption of sound strategy in counsel's decision. That counsel's strategy ultimately failed does not render his performance deficient.[3] *Carll*, 322 Mich App at 702.

---

[3] At oral argument, appellate counsel argued for the first time on appeal that the trial court applied an improper standard to determine whether trial counsel's error on this issue was outcome determinative. Specifically, the trial court stated that trial counsel's failure to seek admission of character evidence was "an ordinary nonconstitutional trial error considering the weakness of the evidence" but concluded "[t]he error does not provide grounds for a new trial because it does not affirmatively appear that it is *more probable than not* that the error was outcome determinative." (Emphasis added). While defendant failed to raise this argument in his brief on appeal, we agree that this is not the proper standard. To prevail on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a *reasonable probability* that [the] outcome would have been different." *Yeager*, 511 Mich at 488 (cleaned up; emphasis added). But because we conclude that trial counsel was not deficient on this issue, the trial court's erroneous application of the "more probable than not" standard is a nondispositive error.

## B.  FABRICATED ALLEGATIONS

Defendant next argues that trial counsel was ineffective for failing to pursue the theory that Cassie and the victims fabricated the allegations of sexual assault as revenge against his mother, Lori.  This claim is without merit.

"Counsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) (cleaned up).  The record reflects that trial counsel did in fact investigate Lori's claim that Cassie fabricated the allegations against defendant.  Trial counsel engaged a forensic psychiatrist, an investigator, and a polygraph examiner before determining that this theory lacked support.  Because trial counsel took steps to investigate Lori's claim, and the truthfulness of both defendant and the victims, we reject defendant's claim that counsel was ineffective for failing to undertake adequate investigation.

Defendant also fails to establish that trial counsel was aware of the specific motivation defendant attributes to Cassie to fabricate the allegations and coach the victims or that counsel had a reasonable evidentiary basis for pursuing that theory at trial.  Trial counsel attempted to pursue this theory at trial insofar as counsel asked Allen about his relationship with Lori, but the prosecution successfully objected to that line of questioning as irrelevant.  Beyond that, Lori testified at the posttrial evidentiary hearing that Cassie specifically threatened to coach the victims to accuse defendant of sexual assault in retaliation for a property dispute that she and Allen had with Lori.  Although Lori testified that she provided trial counsel and his investigator with information about such threats from Allen and Cassie, she later testified that she provided trial counsel with only a folder of information about "timelines" which did not include any documentation about the alleged threats.  Trial counsel testified that Lori largely discussed the property dispute she had with Allen and Cassie and did not mention Cassie's alleged threats against her until counsel's second or third meeting with her.  In addition to the lack of evidence from Lori, trial counsel had several concerns with pursuing the fabrication theory.  Counsel explained that Lori's account of what happened with Allen and Cassie frequently changed, that she did not give him a definitive answer as to why Cassie would have targeted defendant, and that Lori was dishonest with him about key facts.  The record indicates that, at the time of trial, counsel was not aware of specific threats against defendant and otherwise lacked strong evidence to support the fabrication theory.  Defendant has not overcome the strong presumption that trial counsel's decision to not pursue this theory was sound trial strategy.  See *Heft*, 299 Mich App at 83.

## C.  VIDEO RECORDING OF DEFENDANT'S INTERVIEW

Defendant additionally argues that trial counsel was ineffective for failing to insist on presentation to the jury of the complete video recording of defendant's interview with law enforcement, which kept the jury from hearing additional denials of wrongdoing from defendant. We disagree.

In support of his argument, defendant cites MRE 106, which provides, "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."  That rule recognizes that "a thought or

act cannot be accurately understood without considering the entire context and content in which the thought was expressed." *People v McReavy*, 436 Mich 197, 214-215; 462 NW2d 1 (1990). However, "MRE 106 does not automatically permit an adverse party to introduce into evidence the rest of a document once the other party mentions a portion of it. Rather, MRE 106 logically limits the supplemental evidence to evidence that 'ought in fairness to be considered contemporaneously with it.'" *People v Herndon*, 246 Mich App 371, 412 n 85; 633 NW2d 376 (2001).

Defendant's assertions that the unplayed segments of his interview with law enforcement were admissible at trial under MRE 106, and that trial counsel was ineffective for failing to have the entire video played for the jury, are without merit. Defendant did not show at the evidentiary hearing, and has not shown on appeal, that the complete interview was necessary to understand his statements in the segments of the video that were played for the jury. See *McReavy*, 436 Mich at 214-215. In the two video segments played at trial, the jury heard defendant acknowledge that he lived in the same home as the victims for three years, explain that he moved out of that home because he wanted to live on his own, state that he only occasionally babysat the victims, deny ever being alone with the victims in his bedroom, and deny ever touching the victims inappropriately. Defendant does not explain how the jury could have better understood his denials or explanations in the played segments by viewing the unplayed segments, or how additional depictions of his denials were needed to balance the fairness of the played segments. The unplayed segments included introductions, casual conversation about defendant's job, general questions about defendant's relationship with Allen, allegations of child abuse, and statements from law enforcement about the consistency of the allegations. The unplayed segments included irrelevant, repetitive, and possibly prejudicial information, and nothing in the record indicates that these unplayed segments were necessary for the jury to understand defendant's statements and denials in the segments presented at trial.

Trial counsel explained at the evidentiary hearing that he did not ask for the entire video to be played because the unplayed segments would have added or highlighted information damaging to the defense. For example, the jury would have heard unrelated allegations that defendant had hit the victims and intentionally burned their fingers. The jury also would have heard positive statements about the credibility of the victims and defendant's statement that he had not seen the victims since 2016, when he returned to the victims' home to retrieve mail. Those statements supported the prosecution's theory that the victims disclosed defendant's abusive conduct to Allen and Cassie, who responded by forcing defendant out of the Lake City home and abruptly ceasing communication with him. Defendant has not overcome the strong presumption that trial counsel's decision to prevent this potentially harmful or prejudicial information from being presented to the jury was sound trial strategy. See *Heft*, 299 Mich App at 83.

Affirmed.

/s/ Michael J. Kelly
/s/ Sima G. Patel
/s/ Daniel S. Korobkin